United States District Court
Southern District of Texas

**ENTERED**

May 27, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 3:25-cv-00221 |
| KATHLEEN ANNE JONES, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

This is an interpleader action concerning the proceeds of a life insurance policy on Kenneth N. Ellis. Pending before me are two cross-motions for summary judgment. The first motion is filed by Defendant Katelyn A. Mathis, Independent Administrator of the Estate of Kenneth N. Ellis. *See* Dkt. 24. The second motion is filed by Defendant Kathleen Anne Jones. *See* Dkt. 25.

## BACKGROUND

The material facts of this case are not in dispute. On or around February 1, 2001, Ellis purchased a Flexible Premium Variable Universal Life Insurance Policy, No. 5058438 (the "Policy") from Plaintiff Principal Life Insurance Company with a face amount of $2,000,000. Ellis was the sole owner of the Policy. Ellis and Jones married on November 11, 2022. On October 8, 2023, Ellis designated Jones as the Policy's sole beneficiary.

On March 11, 2024, Jones initiated divorce proceedings, filing her Original Petition of Divorce in the County Court at Law No. 3, Galveston County, Texas. A little over a year later, on May 14, 2025, Ellis and Jones entered into a Binding Informal Settlement Agreement Pursuant to § 6.604 of the Texas Family Code and Texas Rule of Civil Procedure 11 (the "Agreement"). The Agreement was filed on the state court's docket that same day. The Agreement stipulates, among other things, that: (i) each party would be awarded all policies of life insurance, including

the cash values, insuring their own lives; (ii) the parties mutually release all claims, demands, and causes of action each may have against the other; (iii) the Agreement was irrevocable; and (iv) the Agreement was effective immediately. *See* Dkt. 24-1. Both parties, along with Ellis's counsel, signed the Agreement. Both parties also signed an Agreed Final Divorce Decree (the "Decree"), which incorporated the terms of the Agreement, included express language divesting each party of all right, title, interest, or claim in any property awarded to the other, and stipulated that the Decree is enforceable as a contract. *See* Dkt. 24-2.

On May 27, 2025, before the judge signed the Decree, Ellis died. Ellis did not remove Jones as the Policy's designated beneficiary before his death. On May 28, 2025, the day after Ellis's death, Jones filed a Revocation of Agreement in the divorce proceedings, purporting to revoke her agreement to the Decree. That same day, Jones contacted Principal Life seeking to collect the Policy's proceeds as the named beneficiary. On June 3, 2025, Sharon Ellis, as Temporary Administrator of Ellis's estate, sent a letter to Principal Life informing the company of the divorce proceedings and the Agreement.[1] Sharon Ellis asserted that the Agreement divested Jones of her status as the Policy's beneficiary and objected to Principal Life paying Jones the life insurance proceeds.

On July 14, 2025, Principal Life instituted this complaint in interpleader. On August 22, 2025, Principal Life deposited the Policy's proceeds into the court registry, was awarded its reasonable attorneys' fees, and was dismissed from the case. *See* Dkt. 18. On January 15, 2026, Mathis substituted for Sharon Ellis as successor in interest as administrator of Ellis's estate.[2] *See* Dkt. 23. Mathis and Jones now move for summary judgment, each arguing that she is entitled to the Policy's proceeds.

---

[1] Sharon Ellis is Ellis's mother.

[2] Mathis is Ellis's daughter.

## LEGAL STANDARDS

### A.    INTERPLEADER

In the Fifth Circuit, "interpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice." *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984). As the Fifth Circuit has explained:

> A district court has broad powers in an interpleader action. An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment.

*Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) (cleaned up).

### B.    SUMMARY JUDGMENT

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024) (quotation omitted). "The movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant makes such a showing, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quotation omitted). The nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (quotation omitted). At this stage, I "view all facts, and the inferences to be drawn from them, in the light most favorable to the nonmovant." *Id.* at 269 (quotation omitted). On cross-motions for summary judgment, I "review each party's motion independently, viewing the evidence and

3

inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

**ANALYSIS**

**A.    THE POLICY IS NOT GOVERNED BY ERISA**

The first issue I must address is whether the Policy constitutes an Employee Retirement Income Security Act of 1974 ("ERISA") plan. Jones contends that "[d]istribution of the insurance settlement proceeds fall within the scope of ERISA," and that "ERISA requires the Court to distribute the life insurance proceeds in accordance with the plan." Dkt. 25 at 7. Typically, "an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, regardless of any state-law waiver purporting to divest that beneficiary of his right to the benefits." *Hennig v. Didyk*, 438 S.W.3d 177, 183 (Tex. App.—Dallas 2014, pet. denied). Thus, if the Policy is an ERISA plan, Jones posits that she would be entitled to the proceeds notwithstanding the Agreement and the Decree. Mathis argues that the Policy is not an ERISA plan because it "was not established by an employer but was established by the Decedent individually" and because it does not "cover the life of or provide death benefits for any person or persons other than Decedent." Dkt. 24 at 9.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An employee welfare benefit plan is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death

or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

*Id.* § 1002(1).

The Policy resembles an employee welfare benefit plan in that it provides benefits upon Ellis's death. But that provision alone is insufficient. Determining whether a plan falls within ERISA's scope "requires a more probing inquiry" into the plan's structure and participants. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

The Department of Labor's regulations state that "the term 'employee benefit plan' shall not include any plan . . . under which no employees are participants covered under the plan." 29 C.F.R. § 2510.3-3(b). The regulations further explain that "[a]n individual . . . shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual." *Id.* § 2510.3-3(c)(1). In recognition of this exception, the Supreme Court has stated that "[p]lans that cover only sole owners . . . fall outside [ERISA]'s domain." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 21 (2004).

Here, the Policy is not governed by ERISA. An employee benefit plan is only governed by ERISA if it covers, as participants, one or more common law employees *in addition* to self-employed individuals. *See id.* at 20. Under the regulations, Ellis is not considered an employee for ERISA purposes. *See* 29 C.F.R. § 2510.3-3(c)(1). The Policy lists Kenneth Ellis as the owner and does not cover any other employees. *See* Dkt. 24-4 at 4. Thus, the Policy is excluded from ERISA.

Jones attaches to her summary judgment papers a $1,500 check issued by Kenneth Ellis D.D.S., P.C. that was purportedly paid to Principal Life for the Policy. *See* Dkt. 25-6. Relying on this check, Jones argues that "there is no dispute that [Ellis] was an employee of [Kenneth Ellis D.D.S., P.C.]" Dkt. 25 at 7. Even if I assume, for the sake of argument, that Kenneth Ellis D.D.S., P.C. was Ellis's employer, this argument fails to move the needle. Without another employee-

participant in the Policy, the Policy covers only Ellis and fails to qualify as an ERISA plan. *See Meredith*, 980 F.2d at 357–58.

**B.    PRINCIPAL LIFE WAS NOT REQUIRED TO PAY THE PROCEEDS TO JONES UNDER TEXAS LAW**

Having determined that ERISA does not govern the Policy, I must now determine whether Texas state law required Principal Life to pay the Policy proceeds to Jones as the named beneficiary of the Policy. The Texas Insurance Code provides that:

> ***Except as provided by Subsection (b)*** or (c), if an individual obtains a policy insuring the individual's life, designates in writing a beneficiary to receive the proceeds of the policy, and files the written designation with the company, the company shall pay the proceeds that become due on the death of the insured to the designated beneficiary.

Tex. Ins. Code § 1103.102(a) (emphasis added). Jones argues that "Texas Insurance Code § 1103.102 mandates that payment be made to the designated beneficiary, Kathleen Jones." Dkt. 25 at 8. Mathis retorts that because "Principal Life received notice of an adverse claim to the Policy proceeds" and because Mathis "has a bona fide legal claim to those proceeds," the Texas Insurance Code does not require Principal Life to pay the proceeds to Jones. Dkt. 26 at 7. Mathis is correct.

It is true that the default circumstance under § 1103.102 would be for Principal Life to pay the proceeds to Jones as the named beneficiary. But subsection (b) provides:

> A company that issues a life insurance policy is not required to pay the proceeds of the policy to a designated beneficiary under Subsection (a) if the company receives notice of an adverse claim to the proceeds from a person who has a bona fide legal claim to all or part of the proceeds.

*Id.* § 1103.102(b). The parties do not dispute that an adverse claim was made to Principal Life on June 3, 2025, when the administrator of Ellis's estate informed Principal Life of the Agreement and the Decree. Nor does Jones dispute that Mathis's claim to the proceeds was bona fide, meaning that the claim was "[m]ade

in good faith; without fraud or deceit." Black's Law Dictionary (11th ed. 2015). Because Principal Life received notice of a bona fide adverse claim, Principal Life was not required to distribute the proceeds to Jones under § 1103.102(a), and summary judgment on that basis is inappropriate.[4]

## C.    MATHIS IS ENTITLED TO SUMMARY JUDGMENT

Mathis moves for summary judgment, arguing that the Agreement is enforceable and divests Jones of any interest in the Policy. Jones contends that the Agreement is unenforceable because Ellis failed to perform, and that she is entitled to the Policy's proceeds as the designated beneficiary. I address each argument in turn.

### 1.    *The Agreement Is Enforceable and Irrevocable*

#### a.    Texas Family Code § 6.604

The Texas Family Code provides that an agreement between divorcing spouses is binding if it:

(1) provides, in a prominently displayed statement that is in boldfaced type or in capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

*Id.* § 6.604(b). "If a written settlement agreement meets the requirements of Subsection (b), a party is entitled to judgment on the settlement agreement

---

[4] In arguing that § 1103.102(a) mandates payment to her, Jones analogies this case to *Gray v. Nash*, 259 S.W.3d 286 (Tex. App—Fort Worth 2008, pet. denied). As Mathis points out: "the facts of *Gray* are vastly different from the facts of this case." Dkt. 26 at 7. Jones's reliance on *Gray* "is misplaced because that case dealt with a life insurance policy where the Decedent re-named his ex-wife as a beneficiary *after* the final decree of divorce was signed. . . . Here, [Ellis] did not re-name Jones as beneficiary after a final decree of divorce was entered." *Id.* Additionally, *Gray* involved Texas Family Code § 9.301, a statute nullifying beneficiary designations of an ex-spouse by operation of law that has no application to the instant matter.

notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 6.604(c).

Mathis argues that the Agreement "is an informal settlement agreement which comports with the requirements of Texas Family Code 6.604(b) making it binding and irrevocable. Thus, Jones's attempt to revoke the Agreement in no way renders it void or unenforceable." Dkt. 24 at 8. In response, Jones contends that "§ 6.604(c) applies [only] to parties that are alive at the time the decree is signed." Dkt. 25 at 11.

Certain settlement agreements under the Texas Family Code are effective immediately upon their signing and irrevocable. *See Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied). In *Spiegel*, a husband and wife entered into a mediated settlement agreement before they were divorced. The wife died before the divorce was finalized. The husband sought a declaratory judgment that the mediated settlement agreement was unenforceable because the wife's death prior to the agreement's incorporation into the final divorce decree invalidated the agreement. The Austin Court of Appeals rejected the husband's argument, holding that "[i]f a mediated settlement agreement meets the statute's requirements, it must be enforced." *Id.*

As in *Spiegel*, the  Agreement is enforceable because it meets § 6.604(b)'s requirements. First, the Agreement states, in bold and capital letters: "**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION**." Dkt. 24-1 at 6. Second, both parties signed the agreement on May 14, 2025. *See id.* at 7. Third, Ellis's attorney, Teal A. de la Garza, signed the agreement.[5] *See id.* Thus, the agreement meets the requirements of Texas Family Code § 6.604(b) and "must be enforced" irrespective of whether the court enters a final divorce decree. *Spiegel*, 228 S.W.3d

---

[5] Mathis argues that when "the agreement was signed, Ms. Jones was not represented by counsel, so no attorney was present and no additional attorney signature was required." Dkt. 24 at 7. This comports with the language of  § 6.604(b)(3), which provides that if a person is represented by counsel, the lawyer must sign the agreement for it to be effective.

at 242. This renders Jones's attempted revocation the day after signing the Agreement ineffective. As articulated in *Spiegel*:

> [Jones] could have made an agreement under section 7.006[6] of the family code if [s]he desired to enter into a settlement agreement that could be rescinded and would not be enforceable until approved by the court. Instead [s]he chose to make an agreement under section 6.602[7] that became binding immediately after it was signed.

*Id.* at 243. While *Spiegel* was decided under § 6.602 instead of § 6.604, its reasoning applies with equal force to the facts of this case. *See In re M.A.H.*, 365 S.W.3d 814, 820 (Tex. App.—Dallas 2012, no pet.) (holding that informal settlement agreement under § 6.604 is irrevocable when it complies with the statute's requirements); *see also Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at *3 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (observing that §§ 6.602(b) and 6.604(b) "are identical except for the references to [the type of settlement agreement]").

Similar to the settlement agreement in *Spiegel*, the plain language of the Agreement indicates that the Ellis and Jones intended that it become immediately binding and effective. The title of the agreement reads "**BINDING INFORMAL SETTLEMENT AGREEMENT PURSUANT TO § 6.604 OF THE TEXAS FAMILY CODE**," and first line states that "[t]he following is a *full* and *final* settlement between the parties pursuant to Rule 11 of the Texas Rules of Civil Procedure and §6.604 of the Texas Family Code." Dkt. 24-1 at 2 (emphasis added).

---

[6] Section 7.006(a) provides:

> To promote amicable settlement of disputes in a suit for divorce or annulment, the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. The agreement may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.

Tex. Fam. Code § 7.006(a).

[7] Section 6.602 sets forth the requirements for an agreement reached between divorcing spouses at a mediated settlement conference to be effective.

The Agreement also states that it "shall be effective immediately." *Id.* at 5. Everything about the Agreement suggests that the parties intended it to be immediately effective.

Further, Jones provides no authority for the proposition that § 6.604(b) applies only to parties that are alive at the time the decree is signed. Such an argument is irreconcilable with *Spiegel*, where the parties' agreement was enforced *after* the wife had died and before the divorce decree was signed. The result should be no different here.

### b.    Texas Rule of Civil Procedure 11

Alternatively, Mathis argues that "the Agreement is a binding and enforceable Rule 11 settlement agreement." Dkt. 24 at 6. Jones counters that Rule 11 does not apply "because this . . . lawsuit was not 'pending' a[t] the time the [Agreement and Decree] were signed." Dkt. 25 at 15.

"Rule 11 agreements have long been recognized in Texas as 'an effective tool for finalizing settlements by objective manifestation so that the agreements do not themselves become sources of controversy.'" *Young v. Ershick*, 617 F. Supp. 3d 563, 575 (E.D. Tex. 2022) (quoting *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007)) (cleaned up). Under Rule 11, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. A settlement agreement that complies with Rule 11 "becomes a contract when executed, not when the trial court attempts to enforce it." *Coale v. Scott*, 331 S.W.3d 829, 832 (Tex. App.—Amarillo 2011, no pet.). "Courts construe Rule 11 settlement agreements just as they would any contract." *MKM Eng'rs, Inc. v. Guzder*, 476 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Here, Mathis has shown that the Agreement is in writing, signed by both parties, and was filed as part of the state court record. Additionally, there is no dispute that the Agreement was executed while the original state court divorce

action was pending. Thus, the Agreement complies with Texas Rule of Civil Procedure 11.

Jones cites *Cunningham v. Zurich American Insurance Co.*, 352 S.W.3d 519, 526 (Tex. App.—Fort Worth, 2011, pet. denied), to argue that "[b]ecause *this* lawsuit was not pending at the time the documents were filed, they are not enforceable under Texas Rule of Civil Procedure." Dkt. 25 at 16 (emphasis added). This argument is meritless. Jones offers no authority for her assertion that "the documents must be signed during time when this [federal] lawsuit was **pending**." *Id*. at 15–16. The fact that this case was not yet pending at the time the parties made the Agreement does not render the Agreement unenforceable here.

Moreover, *Cunningham* is factually dissimilar to this case. The parties in *Cunningham* strongly disputed whether a settlement agreement was ever formed, which is not the crux of the dispute here. But even the court in *Cunningham* recognized that a Rule 11 agreement may be enforced outside of the trial court from which it originated. *See* 352 S.W.3d at 525 ("Rule 11 does not specify that it applies only to suits pending only in the trial court."). *Cunningham* cuts against Jones's argument.

Jones's theory is also at odds with the fact that a settlement agreement complying with Rule 11 "becomes a contract when executed, not when the trial court attempts to enforce it." *Coale*, 331 S.W.3d at 832. The parties executed the Agreement on May 14, 2025. Even if the Agreement could not be enforced as a Rule 11 agreed judgment in the state court divorce action, it is still a binding contract that can be enforced in this court.[8] Accordingly, the Agreement is binding under the Texas Family Code and under Rule 11 as a standalone contract.[9]

---

[8] Even if the Agreement was not enforceable under Rule 11, it remains enforceable as an informal settlement agreement under Tex. Fam. Code § 6.604, which entitles Mathis to judgment "*notwithstanding Rule 11*, Texas Rules of Civil Procedure, or another rule of law." *See* Tex. Fam. Code § 6.604(c) (emphasis added).

[9] Aside from the points addressed above, Jones does not dispute any other aspects of the Agreement's validity. Thus, I need not walk through an analysis as to whether every aspect of a valid contract has been satisfied. That Jones filed a Revocation of Agreement in the

11

### 2. *Mathis Is Capable of Performing the Estate's Obligations Under the Agreement*

Having established that the Agreement is enforceable, the next issue concerns whether Ellis's death precludes his estate's ability to perform the Agreement. Jones argues that Mathis cannot "prove that Ellis performed under the agreement." Dkt. 25 at 15. Mathis insists that the estate is entitled to summary judgment "because the owed performance was not yet due at the time of [Ellis]'s passing," and that Ellis "has not refused to tender performance and is capable of doing such." Dkt. 26 at 10, 11.

"The law of contracts applies to settlement agreements and releases." *Advanced Pers. Care, LLC v. Churchill*, 437 S.W.3d 41, 44 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The general rule is that "a cause of action founded on a contract survives the death of either party." *Hutchings v. Bates*, 393 S.W.2d 338, 343–44 (Tex. App.—Corpus Christi 1965), *aff'd*, 406 S.W.2d 419 (Tex. 1966); *see also Gray v. Bush*, 430 S.W.2d 258, 263 (Tex. App.—Fort Worth 1968, writ ref'd n.r.e.).

Jones argues that "[p]erformance under the mediated settlement agreement, required (1) the Court grant the divorce; (2) Ellis pay Ms. Jones the sum of $30,000.00 cash, and (3) enter orders dividing the property. Performance never occurred, . . . and therefore Defendant Administrator cannot recover under a contract theory." Dkt. 25 at 15. I disagree.

First, the Agreement's enforceability does not hinge on the court granting a divorce, or entering orders dividing the property. Notably absent from the Agreement is any language suggesting that the Agreement's validity is conditioned on any future actions. To the contrary, the Agreement determines the rights of each party and states that it "shall be effective immediately." Dkt. 24-1 at 5.

---

state court divorce action demonstrates that the Agreement was valid and that, at its execution, the parties intended to be bound by it. *See* Dkt. 24-3.

12

Second, Jones presupposes that Ellis was required to pay her $30,000 *during* his life to have performed under the Agreement. Such an assumption does not comport with Texas law. "Under principles of contract law, contractual obligations generally . . . bind [a decedent's] estate if the contract is capable of being performed by the estate representative." *Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 726 (Tex. App.—Austin 1998, pet. denied). The representative of Ellis's estate, Mathis, can pay Jones any amounts owed under the Agreement. *See* Dkt. 26 at 10–11. Thus, Ellis's obligations survive his death and bind his estate. Jones offers no exceptions to this rule that would preclude Ellis's estate from paying the amounts owed under the Agreement.

Third, although the Agreement does require Ellis to pay Jones $30,000, performance was not yet due at the time of Ellis's passing. The Agreement provides the payment be made "on or before the date of Divorce." Dkt. 24-1 at 3. Because the Decree had not been entered, Ellis's deadline to perform had not been triggered. *See Young*, 617 F. Supp. 3d at 593 ("[T]hough [Ellis] never tendered $[30],000 to [Jones] . . . under the Rule 11 Agreement, this does not preclude [Ellis's estate from prevailing] since [his] obligations were not due under the Rule 11 Agreement until later.").

Jones also contends that Ellis's death renders Ellis's estate's performance "impossible" and the agreement unenforceable. Dkt. 27 at 2. This argument holds no water.

"[I]f it is clear the parties intend that time is of the essence to a contract, timely performance is essential to a party's right to require performance by the other party." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). Texas intermediate courts consistently recognize, however, that "[o]rdinarily, time is not of the essence," and "a date stated for performance does not mean time is of the essence." *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Instead, the contract must expressly make time of the essence or there must be something in the nature or

13

purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence."); *see also Laredo Hides Co. v. H & H Meat Prods. Co.*, 513 S.W.2d 210, 217 (Tex. App.—Corpus Christi 1974, writ ref'd n.r.e.) ("As a general rule, a stipulation for the payment of money at a particular time will not be regarded as an essential part of the agreement, in the sense that a breach thereof wholly destroys the contract." (quotation omitted)).

As noted, the Agreement requires Ellis to pay Jones $30,000 "on or before the date of Divorce." Dkt. 24-1 at 3. Although the payment itself is an essential term, the timing of that payment is not. Nothing in the Agreement indicates that payment by the date of the divorce was a material condition, nor does it provide for default or termination in the event of delay. *See Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding timing of payment to not be a material condition when the contract did not include a default provision or indicate that late payment was grounds for termination). Because the Agreement does not expressly or implicitly make time of the essence, the law presumes performance within a reasonable time. *See Border Gateway, L.L.C. v. Gomez*, No. 14-10-01266-CV, 2011 WL 4361485, at *7 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.). Accordingly, Ellis's estate may satisfy the payment obligation within a reasonable time period. So long as Ellis's estate pays the $30,000 within seven days of the adoption of this Memorandum and Recommendation, it has complied with its contractual obligations.

### 3.    *The Agreement Divests Jones as the Policy's Designated Beneficiary*

Having determined that the Agreement is enforceable, irrevocable, and may be performed by Ellis's estate, the last issue concerns whether the Agreement effectively divests Jones from her status as the Policy's named beneficiary. I find that it does.

14

Here, it is undisputed that Jones is the named beneficiary under the Policy, and that Ellis did not provide written notice to Principal Life seeking to change the Policy's designated beneficiary. Even so, Mathis argues that the Agreement "has divested Jones of her beneficiary status under the Policy. Thus, there is not a named beneficiary under the Policy, and the [e]state . . . is entitled to the full amount of the Policy proceeds." Dkt. 24 at 9. Mathis also argues that the Agreement "unequivocally establishes the parties' intention to award, not just ownership of all policies of life insurance, but all benefits obtained through such policies" to each policyholder. Dkt. 26 at 9. In response, Jones contends that she "is the designated beneficiary under the life insurance policy and neither the mediated settlement agreement, nor the proposed final decree of divorce changes that designation." Dkt. 25 at 12.

An agreement in which both parties relinquish any claim to the other's life insurance proceeds is sufficient to divest a named beneficiary, even if the beneficiary designation is never formally changed. *See Novotny v. Wittner*, 731 S.W.2d 103, 105 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). In *Novotny*, the policyholder's ex-wife remained the named beneficiary after their divorce, but the divorce decree stated that each party was divested of all rights in the other's life insurance policies. After the policyholder died, the estate argued that this language eliminated her right to the proceeds. Both the trial court and the Fourteenth Court of Appeals agreed, holding that the decree's express terms terminated her beneficial interest.[10]

---

[10] Courts frequently reach this result when express language in the underlying agreements divests the parties of their beneficial interests in the insurance policies. *See Hennig*, 438 S.W.3d at 188 (divesting policy beneficiary where language in divorce decree showed that beneficiary surrendered both her rights in and claims to future insurance proceeds); *Spiegel*, 228 S.W.3d at 245 (holding that divesting policy beneficiary, *even before divorce decree was entered*, comports with common sense and the broad release contained in the parties' mediated settlement agreement); *Gillespie v. Moore*, 635 S.W.2d 927, 928 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.) (ex-wife agreed that "she will in no event ever claim any interest in any of such policies or the proceeds thereof").

While Jones invites me to blindly apply the Policy's terms, Ellis's intent controls over the Policy's terms. *See Beckham v. Beckham*, 672 S.W.2d 41, 42 (Tex. App.—Houston [14th Dist.] 1984, no writ). And "[w]hile [Ellis's] failure to change the policies creates a presumption that he intended [Jones] to be the beneficiary, this presumption can be rebutted." *Id*. I find that presumption rebutted—and indeed conclusively overridden—by the record.

First, the Decree expressly *divests* Jones of "all right, title, interest, and claim" in any life insurance policy insuring Ellis's life. Dkt. 24-2 at 4–5. That language demonstrates a clear intent to eliminate not only ownership rights in but also any future claim to the Policy proceeds. Courts consistently hold that materially identical language divests a named beneficiary of both ownership and proceeds. *See supra* n.10.[11] The Decree also *awards* Ellis, as his sole and separate property, "[a]ll policies of life insurance (including cash values)" insuring his life. Dkt. 24-2 at 5. Texas courts have treated such language as sufficient to divest a beneficiary's interest. *See Hennig*, 438 S.W.3d at 188.

Second, the Agreement's broad, mutual release of "all claims, demands, and causes of action each may have against the other" supports Ellis's intent to divest Jones as the beneficiary, as well as Jones's intent to relinquish any right to the proceeds. Dkt. 24-1 at 6. In *Spiegel*, the court held that the "broad release by each party of any future claims or demands against the other party" supported revocation of the ex-wife's beneficiary designation. 228 S.W.3d at 245. That reasoning applies here. Moreover, interpreting the Agreement to preserve Jones's beneficiary status would impermissibly render this release provision meaningless.

---

[11] That the Decree was not signed and entered by the judge is immaterial, because both parties stipulated to the Decree as being an enforceable contract. *See* Dkt. 24-2 at 3. Nor is a judge's signature on the decree a requirement; several courts have divested named beneficiaries in the absence of the divorce decree being signed and entered. *See Novotny*, 731 S.W.2d at 105; *Spiegel*, 228 S.W.3d at 242.

*See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

Finally, Ellis lacked a meaningful opportunity to change the beneficiary designation. Ellis's "death, just [13] days after the [Agreement], made it impossible for him to have had an opportunity to finalize matters related to the divorce including the changing of the beneficiary." *Novotny*, 731 S.W.2d at 105 (cleaned up); *see also Beckham*, 672 S.W.2d at 42 ("[W]here a man purchases insurance policies and designates his wife as the beneficiary, later divorces that wife, and is awarded the policies by the divorce decree and dies shortly after the divorce without having changed the beneficiary, we hold that the intent of the decedent, rather than the policies, determines the beneficiary."); *McDonald v. McDonald*, 632 S.W.2d 636, 637 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (divesting beneficiary when policyholder died 25 days after divorce). Such a short interval also lies in stark contrast with cases where courts declined to find divestment after extended inaction by the policyholder. *See Parker v. Parker*, 683 S.W.2d 889, 891 (Tex. App.—Fort Worth 1985, writ ref'd) (declining to divest beneficiary after repeated notices that beneficiary had not been changed).

All things considered, it is clear to me that the parties intended to "sever their financial relationship" when entering into the Agreement and Decree. *Hennig*, 438 S.W.3d at 189. As such, these documents operated to divest Jones as the beneficiary of the Policy. Because Jones is divested, the Policy directs the life insurance proceeds be awarded to Ellis's estate. *See* Dkt. 24-4 at 35.

## CONCLUSION

For the reasons explained above, I recommend Mathis's motion for summary judgment (Dkt. 24) be granted and Jones's motion for summary judgment (Dkt. 25) be denied. I further recommend that Ellis's estate be ordered to tender a lump-sum $30,000 payment to Jones in the form of a money order or cashier's check within seven days after this Memorandum and Recommendation is adopted to finalize performance of the Agreement.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this **27** day of May 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE